# EXHIBIT A

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

SUPREME COURT OF THE STATE OF NEW YORK
ORANGE COUNTY
-------------------------------------------------------------------X
ANNE BEASLEY, TANGANEEKA BUXTON, MARIA
CLAVIJO, KACIE CONKLIN, CESAR CORTES,
ERMELINDA CORTES, CHELSEA LYNN DEVRIES,
MARJORIE DORSAINT, BINOR FAISON, RACHEL
GRACI, ELWOOD GOOD, JOHN GRIFFITHS,
EDWARD HANNIGAN, DION KIMBROUGH,
JEFFREY KLEIN, ASHLEY MARONEY, TONIQUE
MASON, THOMAS PALMER, NYDIA PEREZ,
MICHAEL J. PIERRI, MATTHEW PROKAOSCH,
JOSEPH RHODA, JOHNNY M. RINE, SILVERIO
SABATINO, MICHAEL STEELE, BOBBY TILLERY,
ANDREW TOBACK, DORRIE TOMLINS, DEBRA
WALLS-BARBER, and LAIUNIA WHEELER,

                    *Plaintiffs,*

-against -

THE PORT AUTHORITY OF NEW YORK AND NEW
JERSEY, THE 3M COMPANY, f/k/a Minnesota Mining
and Manufacturing Co., AGC CHEMICALS AMERICAS
INC., AMEREX CORPORATION, ARKEMA INC.,
ARCHROMA U.S. INC., BASF CORPORATION,
individually and as successor in interest to Ciba Inc.,
BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER
GLOBAL CORPORATION, CHEMDESIGN
PRODUCTS INC., CHEMGUARD INC. CHEMICALS,
INC., CLARIANT CORPORATION, individually and as
successor in interest to Sandoz Chemical Corporation,
CORTEVA, INC., individually and as successor in interest
to DuPont Chemical Solutions Enterprise, DEEPWATER
CHEMICALS, INC., DUPONT DE NEMOURS INC.,
individually and as successor in interest to DuPont
Chemical Solutions Enterprise, DYNAX
CORPORATION, E. I. DUPONT DE NEMOURS AND
COMPANY, individually and as successor in interest to
DuPont Chemical Solutions Enterprise, KIDDE-
FENWAL, INC., individually and as successor in interest
to Kidde Fire Fighting, Inc., NATION FORD CHEMICAL
COMPANY, NATIONAL FOAM, INC., THE
CHEMOURS COMPANY, individually and as successor
in interest to DuPont Chemical Solutions Enterprise, THE

Index No. _____/2022

Trial by jury is desired in the
County of Orange

**BASIS OF VENUE: CAUSE OF
ACTION AROSE IN ORANGE
COUNTY**

**COMPLAINT WITH
INDIVIDUAL CLAIMS AND
DEMAND FOR JURY TRIAL**

1

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM     INDEX NO. EF003519-2022

NYSCEF DOC. NO. 1     RECEIVED NYSCEF: 06/30/2022

CHEMOURS COMPANY FC, LLC, individually and as successor in interest to DuPont Chemical Solutions Enterprise, TYCO FIRE PRODUCTS, LP, individually and as successor in interest to The Ansul Company, and JOHN DOE DEFENDANTS 1-20,

    *Defendants.*

-----------------------------------------------------------------------X

Plaintiffs, ANNE BEASLEY, TANGANEEKA BUXTON, MARIA CLAVIJO, KACIE CONKLIN, CESAR CORTES, ERMELINDA CORTES, CHELSEA LYNN DEVRIES, MARJORIE DORSAINT, BINOR FAISON, RACHEL GRACI, ELWOOD GOOD, JOHN GRIFFITHS, EDWARD HANNIGAN, DION KIMBROUGH, JEFFREY KLEIN, ASHLEY MARONEY, TONIQUE MASON, THOMAS PALMER, NYDIA PEREZ, MICHAEL J. PIERRI, MATTHEW PROKAOSCH, JOSEPH RHODA, JOHNNY M. RINE, SILVERIO SABATINO, MICHAEL STEELE, BOBBY TILLERY, ANDREW TOBACK, DORRIE TOMLINS, DEBRA WALLS-BARBER, and LAIUNIA WHEELER, by and through their undersigned counsel, hereby file this Complaint and make these allegations based on information and belief and/or which are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery against Defendants, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Co., AGC CHEMICALS AMERICAS INC., AMEREX CORPORATION, ARKEMA INC., ARCHROMA U.S. INC., BASF CORPORATION, BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC., CHEMICALS, INC., CLARIANT CORPORATION, CORTEVA, INC., DEEPWATER CHEMICALS, INC., DUPONT DE NEMOURS INC., DYNAX CORPORATION, E. I. DUPONT DE NEMOURS AND COMPANY, KIDDE-FENWAL, INC., NATION FORD CHEMICAL COMPANY,

2

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM     INDEX NO. EF003519-2022
NYSCEF DOC. NO. 1                                         RECEIVED NYSCEF: 06/30/2022

NATIONAL FOAM, INC., THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, and TYCO FIRE PRODUCTS, LP, and DOE DEFENDANTS 1-20, fictitious names whose present identifies are unknown (collectively "Defendants") as follows:

## I.     INTRODUCTION

1.     The City of Newburgh (hereinafter the "City" or "City of Newburgh") is located in the County of Orange, State of New York.

2.     Lake Washington served as the primary water supply for the City of Newburgh at all times relevant, except when it was taken out of service due to the PFOS contamination.

3.     The Stewart International Airport is located approximately 2.5 miles west of the City of Newburgh.

4.     The Stewart International Airport is located upgradient from Lake Washington.

5.     The Stewart Air National Guard Base is located at the Stewart International Airport, located approximately 2.5 miles west of the City of Newburgh, New York.

6.     The Stewart Air National Guard Base and Stewart International Airport have used, stored, discharged, and released aqueous firefighting foams ("AFFF") and other materials containing perfluorooctanesulfonic acid ("PFOS") and related fluorochemicals that can degrade to perfluorooctanoic acid ("PFOA") or PFOS into the City of Newburgh's drinking water supply.

7.     Plaintiffs are residents of the State of New York that have been exposed to levels of PFOS greater than the national average as a result of the contamination of their water supply and have suffered injuries due to said contamination.

8.     The Stewart Air National Guard Base and Stewart International Airport have been linked to the contamination of surface and groundwater with PFOS, PFOA, and other perfluorinated chemicals ("PFCs") that serve the City of Newburgh's drinking water supply.

3

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM    INDEX NO. EF003519-2022
NYSCEF DOC. NO. 1                                   RECEIVED NYSCEF: 06/30/2022

9.    PFOS and PFOA ("PFOS/A") that originated and was released from the Stewart Air National Guard Base and the Stewart International Airport has contaminated Lake Washington and its tributaries relied upon by the City of Newburgh.

10.    PFOS and PFOA have been detected at levels exceeding the current EPA Health Advisory Level (HAL) for drinking water of 0.004 ppt for PFOA and 0.02 ppt for PFOS and New York State's MCL of 10 ppt for PFOA and PFOS in Lake Washington, as well as groundwater samples collected from existing wells from the Stewart International Airport and Stewart Air National Guard Base.

11.    Plaintiffs are individuals that have been exposed to levels of PFOS substantially greater than the national average while living and/or working in the City of Newburgh as a result of both (1) the Port Authority's and manufacturing defendants' contamination of the City of Newburgh water supply, and (2) the Defendant City of Newburgh knowingly serving contaminated water to its paying customers in the City of Newburgh for at least three (3) years, and likely much longer.

12.    The Stewart Air National Guard Base and Stewart International Airport have been determined by the NYSDEC to be the cause the contamination of surface and groundwater with PFOA, PFOS and other PFCs that serve the City of Newburgh's drinking water supply.

13.    Stewart International Airport is located on or about 1180 1st Street, New Windsor, New York.

14.    Stewart Air National Guard Base is adjacent to the Stewart International Airport but is part of the same property.

15.    Since 2007, Defendant Port Authority of New York and New Jersey (hereinafter the "Port Authority") has been the leasee, controller and operator of Stewart International Airport.

4

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

16.    The property was originally donated to the City of Newburgh in 1930 for use as a municipal airport.

17.    Prior to this, the property was used mostly for agricultural purposes.

18.    In 1941, the City turned over the land to the US Army for use as a flight training facility for the cadets at the United States Military Academy at West Point, New York.

19.    In 1948, the US Army transferred much of the Stewart Air National Guard Base to the US Air Force.

20.    The aviation facilities were turned over to the State of New York in 1969.

21.    In 1970, the military section of the property was temporarily deactivated.

22.    In the 1970s, the civilian section of Stewart was operating as an airport.

23.    In 1983, the military section of Stewart reopened with the establishment of the

24.    105th Air Lift Wing of the New York Air National Guard.

25.    In 2007, the Port Authority of New York and New Jersey purchased the remaining 93 years of the lease from National Express Group and took over possession, control and operation of the Stewart International Airport.

26.    Upon information and belief, AFFF has been used at the Stewart Air National Guard Base and Stewart International Airport since approximately 1970, which contains both PFOS and PFOA.

27.    At Stewart Air National Guard Base and Stewart International Airport, AFFF was used at crash sites and at the Airport Fire Training Areas, among other locations, in addition to leaking tanks, leading to the eventual release of AFFF into the groundwater and drinking water supply of the Plaintiffs and the City.

5

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

28.    On April 30, 1990, a spill of approximately 4,000 gallons of Ansul Ansulite 3% AFFF entered the storm drain which enters Silver Steam, contributing to the contamination of Plaintiffs' drinking water supply.

29.    On September 5, 1996, a Douglas DC-10-10CF, operated by Federal Express Corporation as flight 1406 made an emergency landing at Stewart International Airport due to fire in the cabin.

30.    After landing, the airplane was destroyed by fire and AFFF was used to extinguish the flames.

31.    In August 2016, the NYSDEC declared the Stewart Air National Guard Base a State Superfund Site.

32.    AFFF was used extensively at the Stewart Air National Guard Base and Stewart International Airport site for training purposes.

33.    Upon information and belief, AFFF was also discharged from the Stewart Air National Guard Base and Stewart International Airport Site in various ways, including but not limited to undocumented spills, leaks, tanks, storage facilities, and fire training exercises.

34.    The AFFF discharged, intentionally, negligently, or otherwise, was allowed to be discharged to the surrounding properties and into the soil, surface waters, groundwater, and eventually into the drinking water supply of the Plaintiffs.

35.    The AFFF used was never treated, captured, or otherwise contained  any manner to prevent or mitigate the eventual contamination of Plaintiffs' water supply.

36.    The AFFF discharged to the surrounding drainage basins and eventually into Washington Lake.

6

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

37.     As a result of the PFOS/A contamination of the City of Newburgh's drinking water supply, over 30,000 residents were unknowingly poisoned over many years.

38.     Plaintiffs have suffered real personal injuries, bioaccumulation of PFOS/A in their bodies, property damage, and the diminution in value of their properties as a result of the PFOA and PFOS contamination of their water supply by AFFF releases.

39.     Plaintiffs have suffered from an assortment of diseases and medical conditions as a direct result of their exposure to PFOS/A contamination of the City of Newburgh's drinking water supply.

40.     The Plaintiffs, as residents and those who visited, worked, went to school, or otherwise drank water in the City of Newburgh area, have been unknowingly exposed for many years to PFCs including at concentrations hazardous to their health.

41.     Plaintiffs' unwitting exposure to PFOS/A in the City of Newburgh drinking water supply as a result of the Defendants' conduct is the direct and proximate cause of Plaintiffs' injuries.

42.     The properties of Plaintiffs have been damaged as a result of the presence of PFCs in their potable water.

43.     Plaintiffs seek recovery from Defendants for injuries, damages and losses suffered by Plaintiffs as a result of exposure to the introduction of PFOS, PFOA and other toxic substances into the drinking water of the City of Newburgh area and then into their properties and bodies, in an amount to be determined at trial, exclusive of interest, costs, and attorneys' fees.

## II.     JURISDICTION AND VENUE

44.     This Court has personal jurisdiction over Defendant, The Port Authority of New York and New Jersey, pursuant to Title 17 of the Unconsolidated Laws of New York, § 7106, due to the residence of Defendant in Orange County.

7

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

45.    This case is properly venued in this Court pursuant to CPLR 503(a), because Plaintiffs reside in Orange County.

46.    This case is properly venued in this Court because Defendant Port Authority of New York and New Jersey operated Stewart International Airport at the time of the discharge and/or disposal and/or release of hazardous and toxic substances and/or violation of the State Pollutant Discharge Elimination System ("SPDES") permits, pursuant to Title 17 of the Unconsolidated Laws of the State of New York, §7106.

47.    Upon information and belief, this Court has personal jurisdiction over the Manufacturing Defendants as each of them is doing business in New York by manufacturing, distributing, producing and marketing products, services and/or materials in this State and/or to this State.

48.    At all relevant times to the Complaint, Defendants conducted substantial business in New York and availed themselves to the legal rights in New York thereby.

49.    Upon information and belief, Defendants maintain websites accessible to New York residents.

50.    Defendants have systematic and continuous commercial contacts with New York to establish jurisdiction over them pursuant to CPLR 302.

51.    This Court has personal jurisdiction over the defendants as each of them are doing business in New York and engage in business in New York such that it is reasonably foreseeable that they would be subject to jurisdiction of the courts of this State.

52.    This case is properly venued in this Court because the actions of the Defendants and the injuries and damages alleged herein all occurred in the County of Orange, New York.

8

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

### III.    PARTIES

#### A.    Plaintiffs

53.    Plaintiff Anne Beasley is a resident of the County of Orange and State of New York. Plaintiff owns her home at 6 Cullen Avenue, New Windsor, New York 12553. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

54.    Anne Beasley has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood.

55.    Anne Beasley has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, kidney cancer, and other autoimmune diseases.

56.    While living at 6 Cullen Avenue, PFOS/A entered Anne Beasley's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

57.    Plaintiff Tanganeeka Buxton resides at 15 S Bridge St, Apt 214, Poughkeepsie, NY 12601. From 2014 to 2019, Ms. Buxton was a resident of the City of Newburgh, County of Orange and State of New York. While living in Newburgh, Plaintiff Tanganeeka Buxton resided at 97 Grand St, Newburg, NY 12550. Plaintiff also resided at 123 Third St, Newburgh, NY 12550. During her time at 97 Grand St and at 123 Third St the properties received their water from the City of Newburgh, which drew its water from Washington Lake.

58.    Tanganeeka Buxton has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood. Ms. Buxton received her PFOS/A blood test results on October 28, 2021, her PFOS levels were 0.0881 ug/L and her PFOA was below detectable levels.

59.    Tanganeeka Buxton has suffered from ulcerative colitis as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited

9

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM    INDEX NO. EF003519-2022
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 06/30/2022

to effects on the liver and immune system, high cholesterol, kidney cancer, and other autoimmune diseases.

60.     While living at 97 Grand St and at 123 Third St, PFOS/A entered Tanganeeka Buxton's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

61.     Plaintiff Maria Clavijo resides at 8726 Sorano Villa Drive, Tampa, FL 33647. From 1992 to 2018, Mrs. Clavijo was a resident of the City of Newburgh, County of Orange and State of New York. While living in Newburgh, Plaintiff Maria Clavijo resided at 109 Fletcher Drive N, Newburg, NY 12550. During her time at 109 Fletcher Drive N, the property received its water from the City of Newburgh, which drew its water from Washington Lake.

62.     Maria Clavijo has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood.

63.     Maria Clavijo has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol, kidney cancer, and other autoimmune diseases.

64.     While living at 109 Fletcher Drive N, PFOS/A entered Maria Clavijo's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

65.     Plaintiff Kacie Conklin is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Kacie Conklin owns her home at 13 Holiday Park, Newburgh, New York 12559. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

10

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

66.    Kacie Conklin has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood.

67.    Kacie Conklin has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, kidney cancer, and other autoimmune diseases.

68.    While living at 13 Holiday Park, PFOS/A entered Kacie Conklin's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

69.    Plaintiff Cesar Cortes is a resident of the City of Newburgh, County of Orange and State of New York, and owns his home at 13 Leary Ln, Newburgh, New York 12550, where he has lived for 27 years. The property received its water from a private well until April 2020.

70.    Cesar Cortes has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

71.    Cesar Cortes has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, testicular cancer, kidney cancer, and other autoimmune diseases.

72.    While living at 13 Leary Ln, PFOS/A entered Cesar Cortes' property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

73.    Plaintiff Ermelinda Cortes is a resident of the City of Newburgh, County of Orange and State of New York, and owns her home at 13 Leary Ln, Newburgh, New York 12550, where she has lived for 27 years. The property received its water from a private well until April 2020.

11

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

74.     Ermelinda Cortes has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood.

75.     Ermelinda Cortes has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, kidney cancer, and other autoimmune diseases.

76.     While living at 13 Leary Ln, PFOS/A entered Ermelinda Cortes' property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

77.     Plaintiff Chelsea Devries resides at 175 Konefal Avenue, Pine Bush, New York, 12566. From 2014 to 2017, Ms. Devries was a resident of the City of Newburgh, County of Orange and State of New York. While living in Newburgh, Plaintiff Chelsea Devries resided at 330 Powell Avenue, Newburgh, NY 12550. During her time at 330 Powell Avenue the property received its water from the City of Newburgh, which drew its water from Washington Lake.

78.     Chelsea Devries has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood.

79.     Chelsea Devries has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol, kidney cancer, and other autoimmune diseases.

80.     While living at 330 Powell Avenue PFOS/A entered Chelsea Devries' property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

81.     Plaintiff Marjorie Dorsaint is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Marjorie Dorsaint owns her home at 15 Hillside Avenue, New

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

Windsor, New York 12553. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

82.    Marjorie Dorsaint has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood.

83.    Marjorie Dorsaint has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, kidney cancer, and other autoimmune diseases.

84.    While living at 15 Hillside Avenue, PFOS/A entered Marjorie Dorsaint's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

85.    Plaintiff Binor Faison resides at 3104 Capstone Way, Commerce, GA 30529. For 37 years, Mr. Faison was a resident of the City of Newburgh, County of Orange and State of New York. While living in Newburgh, Plaintiff Binor Faison resided at 24 Grand Avenue, 31 Lander St, 31 Dubois St, and 75 Broadway St, Newburg, NY 12550.

86.    During his time at 24 Grand Avenue, 31 Lander St, 31 Dubois St, and 75 Broadway St, the properties received their water from the City of Newburgh, which drew its water from Washington Lake.

87.    Binor Faison has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood. Mr. Faison received his PFOS/A blood test results on November 13, 2019, and his levels were 1.42 ug/L and 0.888 ug/L respectively.

88.    Binor Faison has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on

13

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

the liver and immune system, testicular cancer, high cholesterol, kidney cancer, and other autoimmune diseases.

89.     While living at 24 Grand Avenue, 31 Lander St, 31 Dubois St, and 75 Broadway St, PFOS/A entered Binor Faison's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

90.     Plaintiff Rachel Graci resides at 21 Virginia Avenue, Poughkeepsie, NY 12601. For 18 years, Ms. Graci was a resident of the City of Newburgh, County of Orange and State of New York. While living in Newburgh, Plaintiff Rachel Graci resided at 319 West St, Newburg, NY 12550. During her time at 319 West St the property received its water from the City of Newburgh, which drew its water from Washington Lake.

91.     Rachel Graci has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood. Mrs. Graci received her PFOS/A blood test results on June 28, 2017, and her levels of PFOS/A were 19.3 ug/L and 2.49 ug/L respectively.

92.     Rachel Graci has suffered from ulcerative colitis as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol, kidney cancer, and other autoimmune diseases.

93.     While living at 319 West St, PFOS/A entered Rachel Graci's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

94.     Deceased Plaintiff Elwood Good was a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Elwood Good resided at 11 Washington Terrace, Unit 209, Newburgh, New York 12550, for 5 years until his death. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

14

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

95.    Elwood Good had been exposed to PFOS/A and had elevated levels of PFOS/A in his blood.

96.    Elwood Good suffered from thyroid disease and ulcerative colitis as a direct result of exposure to PFOS/A.

97.    Plaintiff Elwood Good died on August 19, 2021, due to complications from liver disease he developed as a direct result of his exposure to PFOS/A.

98.    While living at 11 Washington Terrace, Unit 209, PFOS/A entered Elwood Good's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

99.    Plaintiff John Griffiths resides at 301 E 48th Street, Apt 7D, New York, NY 10017. At all times relevant herein, Plaintiff John Griffiths worked at Stewart Air National Guard Base for 3 years.

100.    John Griffiths has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

101.    John Griffiths has suffered from prostate cancer as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol, thyroid disease, testicular cancer, kidney cancer, and other autoimmune diseases.

102.    While working on Stewart Air National Guard Base, PFOS/A entered John Griffiths' work area, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

103.    Plaintiff Edward Hannigan is a resident of the City of Newburgh, County of Orange and State of New York. Edward Hannigan resides at 388 Washington St, Newburg, New York

15

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

12550. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

104.     Edward Hannigan has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

105.     Edward Hannigan has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, prostate cancer, high cholesterol, kidney cancer, and other autoimmune diseases.

106.     While living at 388 Washington St, PFOS/A entered Edward Hannigan's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

107.     Plaintiff Dion Kimbrough is a resident of the City of Newburgh, County of Orange and State of New York. Dion Kimbrough resides at 166 North Miller St, Newburg, New York 12550. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

108.     Dion Kimbrough has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

109.     Dion Kimbrough has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, prostate cancer, high cholesterol, kidney cancer, and other autoimmune diseases.

16

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

110.    While living at 166 North Miller St, PFOS/A entered Dion Kimbrough's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

111.    Plaintiff Jeffrey Klein is a resident of the City of Newburgh, County of Orange and State of New York. Jeffrey Klein resides at 506 Roman Way, Newburg, New York 12550. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

112.    From 1984 to 2019, Jeffrey Klein lived at 56 Chestnut Ln, Newburgh, NY 12550, the property received its water from a private well.

113.    Jeffrey Klein has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood. Mr. Klein received his PFOS/A blood test results on August 31, 2017, and his PFOS/A levels were 36.3 ug/L and 3.12 ug/L respectively.

114.    Jeffrey Klein has suffered from prostate cancer as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, prostate cancer, high cholesterol, kidney cancer, and other autoimmune diseases.

115.    While living at 506 Roman Way and at 56 Chestnut Ln, PFOS/A entered Jeffrey Klein's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

116.    Plaintiff Ashley Maroney resides at 14 Dale Ct, Massapequa, NY 11758. For 5 years, Mrs. Maroney was a resident of the City of Newburgh, County of Orange and State of New York. While living in Newburgh, Plaintiff Ashley Maroney resided at 429 Liberty St, Newburg,

17

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

NY 12550. During her time at 429 Liberty St the property received its water from the City of Newburgh, which drew its water from Washington Lake.

117.    Ashley Maroney has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood.

118.    Ashley Maroney has suffered from kidney cancer as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol, kidney cancer, and other autoimmune diseases.

119.    While living at 429 Liberty St, PFOS/A entered Ashley Maroney's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

120.    Plaintiff Tonique Mason is a resident of the City of Newburgh, County of Orange and State of New York. Tonique Mason resides at 18 Jamison Pl, Newburg, New York 12550. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

121.    Tonique Mason has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

122.    Tonique Mason has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol, kidney cancer, and other autoimmune diseases.

123.    While living at 18 Jamison Pl, PFOS/A entered Tonique Mason's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

18

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

124.    Plaintiff Thomas Palmer is a resident of the County of Orange and State of New York. Plaintiff owns his home at 199 Sycamore Dr, New Windsor, New York 12553. The property receives its water from a private well.

125.    From December 28, 2013 to January 7, 2015, Plaintiff resided at 508 Shore Dr, New Windsor, NY 12553. The property received its water from the City of Newburgh, which drew its water from Washington Lake. Prior to that, from June 19, 1987 to December 27, 2013, Plaintiff resided at 73 Beaver Brook Road, New Windsor, NY 12553. The property received its water from a private well.

126.    Thomas Palmer has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood. Mr. Palmer received his PFOS/A blood test results on August 30, 2020, and his PFOS/A levels were 9.09 ug/L.

127.    Thomas Palmer has suffered from testicular cancer as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, kidney cancer, and other autoimmune diseases.

128.    While living at 199 Sycamore Dr, 508 Shore Dr, and 73 Beaver Brook Road, PFOS/A entered Thomas Palmer's properties, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

129.    Plaintiff Nydia Perez is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Nydia Perez owns her home at 28 Poplar St, Newburgh, New York 12550. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

130.    Nydia Perez has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood. Mrs. Perez received her PFOS/A blood test results on March 22, 2017, and her PFOS/A levels were 70.7 ug/L and 6.25 ug/L respectively.

131.    Nydia Perez has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, kidney cancer, and other autoimmune diseases.

132.    While living at 28 Poplar St PFOS/A entered Nydia Perez's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

133.    Plaintiff Michael J. Pierri is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Michael J. Pierri owns his home at 426 3rd St, Newburgh, New York 12550, where he has lived for 32 years. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

134.    Michael J. Pierri has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

135.    Michael J. Pierri has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, kidney cancer, prostate cancer and other autoimmune diseases.

136.    While living at 426 3rd St, PFOS/A entered Michael J. Pierri's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

137.    Plaintiff Matthew Prokaosch is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Matthew Prokaosch owns his home at 11 Galloway

20

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

Avenue, Newburgh, New York 12550, where he has lived for 20 years. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

138.    Matthew Prokaosch has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

139.    Matthew Prokaosch has suffered from testicular cancer as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, kidney cancer, prostate cancer and other autoimmune diseases.

140.    While living at 11 Galloway Avenue, PFOS/A entered Matthew Prokaosch's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

141.    Plaintiff Joseph Rhoda is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Joseph Rhoda owns his home at 424 Carpenter Avenue, Apt 7, Newburgh, New York 12550, where he has lived for 36 years. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

142.    Joseph Rhoda has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

143.    Joseph Rhoda has suffered from prostate cancer as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, kidney cancer, prostate cancer and other autoimmune diseases.

21

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM    INDEX NO. EF003519-2022

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/30/2022

144.    While living at 424 Carpenter Avenue, Apt 7, PFOS/A entered Joseph Rhoda's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

145.    Plaintiff Johnny M. Rine is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Johnny M. Rine resides at 46 Townsend Ave., Newburgh, NY 12550. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

146.    Johnny M. Rine has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

147.    Johnny M. Rine has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, kidney cancer, prostate cancer and other autoimmune diseases.

148.    While living at 46 Townsend Ave., PFOS/A entered Johnny M. Rine's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

149.    Plaintiff Silverio Sabatino resides at 835 Blooming Grove Turnpike, Apt. 237, New Windsor, NY 12553. From 2002 to 2011, Mr. Sabatino was a resident of the City of Newburgh, County of Orange and State of New York. While living in Newburgh, Plaintiff Silverio Sabatino resided at 7 Sylvan Park Drive, Newburgh, NY 12550. During his time at 7 Sylvan Park, the property received its water from the City of Newburgh, which drew its water from Washington Lake.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

150.    Silverio Sabatino has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

151.    Silverio Sabatino has suffered from testicular cancer as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol, kidney cancer, and other autoimmune diseases.

152.    While living at 7 Sylvan Park Drive, PFOS/A entered Silverio Sabatino's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

153.    Plaintiff Michael Steele resides at 33 Abes Way, Poughkeepsie, New York 12601. At all times relevant herein, Plaintiff Michael Steele worked as an aircraft mechanic on Stewart Air National Guard Base for 3 years. Also, Mr. Steele was part of the clean up team when AFFF was used.

154.    Michael Steele has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

155.    Michael Steele has suffered from ulcerative colitis as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol, thyroid disease, testicular cancer, kidney cancer, and other autoimmune diseases.

156.    While working on Stewart Air National Guard Base, PFOS/A entered Michael Steele's work area, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

157.    Plaintiff Bobby Tillery is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Bobby Tillery resides at 34 Roe St, Newburgh, New York 12550.

23

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

He owns the property, which receives its water from the City of Newburgh, which drew its water from Washington Lake.

158.    Plaintiff has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood. Bobby Tillery received his PFOS/A blood test results on November 14, 2019, and his levels were 23.9 ug/L and 3.33 ug/L respectively.

159.    Bobby Tillery has suffered from prostate cancer as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, testicular cancer, and autoimmune diseases.

160.    While living at 34 Roe St, PFOS/A entered the property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

161.    Plaintiff Andrew Toback is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Andrew Toback resides at 119 Holly Drive, New Windsor, New York 12553. He owns the property, which receives its water from the City of Newburgh, which drew its water from Washington Lake.

162.    From 2002 to 2021, Plaintiff Andrew Toback worked at 201 Fullerton Avenue, Newburgh, New York 12550, which receives its water from the City of Newburgh, which drew its water from Washington Lake.

163.    Plaintiff has been exposed to PFOS/A and has elevated levels of PFOS/A in his blood.

164.    Andrew Toback has suffered from kidney cancer and thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, testicular cancer, and autoimmune diseases.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

165.    While living at 119 Holly Drive and working at 201 Fullerton Avenue, PFOS/A entered the properties, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

166.    Plaintiff Dorrie Tomlins is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Dorrie Tomlins resides at 10 Langdon Ln, Walden, New York 12586. Dorrie Tomlins owns the property, which receives its water from a private well.

167.    Dorrie Tomlins has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood.

168.    Dorrie Tomlins has suffered from ulcerative colitis as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, kidney cancer, and other autoimmune diseases.

169.    While living at 10 Langdon Ln, PFOS/A entered the property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

170.    Plaintiff Debra Walls-Barber resides at 78 Carmine, Wappingers Falls, New York 12590. For approximately 24 years, Plaintiff Debra Walls-Barber worked at WGNY Sunrise Media, located at 661 Little Britain Road, New Windsor, New York 12553, which receives its water from a private well.

171.    Debra Walls-Barber has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood.

172.    Debra Walls-Barber has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol, kidney cancer, and other autoimmune diseases.

25

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

173.    While working at WGNY Sunrise Media, PFOS/A entered Debra Walls-Barber's work area, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

174.    Plaintiff Laiunia Wheeler is a resident of the City of Newburgh, County of Orange and State of New York. Plaintiff Laiunia Wheeler resides at 68 Carpenter Avenue, Newburgh, New York 12550. The property receives its water from the City of Newburgh, which drew its water from Washington Lake.

175.    Laiunia Wheeler has been exposed to PFOS/A and has elevated levels of PFOS/A in her blood.

176.    Laiunia Wheeler has suffered from thyroid disease as a direct result of exposure to PFOS/A and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, thyroid disease, kidney cancer, and other autoimmune diseases.

177.    While living at 68 Carpenter Avenue, PFOS/A entered Laiunia Wheeler's property, including but not limited to the accumulation of PFOS/A in the pipes, faucet, showerheads, and appliances.

**B.    Defendants**

1.    The AFFF Defendants

178.    The term "AFFF Defendants" refers collectively to Defendants 3M Company, Amerex Corporation, Buckeye Fire Equipment Company, Carrier Global Corporation, Chemguard Inc., Kidde-Fenwal, Inc., and Tyco Fire Products L.P.

179.    Defendant The 3M Company f/k/a Minnesota Mining and Manufacturing Co. ("3M") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144-1000.

26

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

180.    Beginning before 1970 and until at least 2002, 3M designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

181.    Defendant Amerex Corporation ("Amerex") is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business located at 7595 Gadsden Highway, Trussville, AL 35173.

182.    Amerex is a manufacturer of firefighting products. Beginning in 1971, it was a manufacturer of hand portable and wheeled extinguishers for commercial and industrial applications.

183.    In 2011, Amerex acquired Solberg Scandinavian AS, one of the largest manufacturers of AFFF products in Europe.

184.    On information and belief, beginning in 2011, Amerex designed, manufactured, marketed distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

185.    Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143-2542.

186.    Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990.

187.    Beginning in or around 1975, Ansul designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

27

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1                                    INDEX NO. EF003519-2022
                                                     RECEIVED NYSCEF: 06/30/2022

188.    After Tyco acquired Ansul in 1990, Tyco/Ansul continued to design, manufacture, market, distribute, and sell AFFF products containing PFAS, including but not limited to PFOA and PFOS.

189.    Defendant Chemguard, Inc. ("Chemguard") is a corporation organized under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143.

190.    On information and belief, Chemguard designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA and PFOS.

191.    On information and belief, Chemguard was acquired by Tyco International Ltd. in 2011.

192.    Defendant Buckeye Fire Equipment Company ("Buckeye") is a corporation organized under the laws of the State of Ohio, with its principal place of business located at 110 Kings Road, Kings Mountain, North Carolina 28086.

193.    On information and belief, Buckeye designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA and PFOS.

194.    Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware, with its principal place of business at One Financial Plaza, Hartford, Connecticut 06101.

195.    Beginning in or around 1973, National Foam designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

196.    On information and belief, National Foam merged with Chubb Fire Ltd. to form Chubb National Foam, Inc. in or around 1988.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

197.    On information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. (collectively referred to as "Chubb").

198.    On information and belief, Chubb was acquired by Williams Holdings in 1997.

199.    On information and belief, Angus Fire Armour Corporation had previously been acquired by Williams Holdings in 1994.

200.    On information and belief, Williams Holdings was demerged into Chubb and Kidde P.L.C. in or around 2000.

201.    On information and belief, when Williams Holdings was demerged, Kidde P.L.C. became the successor in interest to National Foam System, Inc. and Angus Fire Armour Corporation.

202.    On information and belief, Kidde P.L.C. was acquired by United Technologies Corporation in or around 2005.

203.    On information and belief, Kidde-Fenwal was an operating subsidiary of Kidde P.L.C. and manufactured AFFF following Kidde P.L.C.'s acquisition by United Technologies Corporation.

204.    On information and belief, the Angus Fire and National Foam businesses separated from United Technologies Corporation in or around June 2013.

205.    On information and belief, Kidde-Fenwal is the entity that in June 2013 divested the AFFF business unit now operated by National Foam.

29

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

206.    Defendant Carrier Global Corporation ("Carrier") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

207.    On information and belief, Carrier was formed in March 2020 when United Technologies Corporation spun off its fire and security business prior to merging with Raytheon Company a month later. On information and belief, Carrier became successor in interest to Kidde-Fenwal as part of the spin off and is legally responsible for the liabilities arising from Kidde-Fenwal's design, manufacture, marketing, distribution, and sale of AFFF.

208.    On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and sold AFFF products containing PFOS, PFOA, and/or their chemical precursors that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at Stewart Air National Guard Base and Stewart International Airport.

2.    The Fluorosurfactant Defendants

209.    The term "Fluorosurfactant Defendants" refers collectively to Defendants 3M, Arkema Inc., ChemDesign Products Incorporated, Chemguard Inc., Deepwater Chemicals, Inc., E.I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours Inc., and Dynax Corporation.

210.    Defendant Arkema Inc. ("Arkema") is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business at 900 First Avenue, King of Prussia, PA 19406.

211.    On information and belief, beginning sometime in the early 1970s, the French chemical company Atochem designed, manufactured, marketed, distributed, and sold

30

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

212.     On information and belief, when Atochem's parent company, Elf-Acquitaine, merged with TotalFina in 1999 to form TotalFinaElf, the two companies combined their chemical operations to create Atofina S.A. ("Atofina"). On information and belief, Atofina continued to design, manufacture, market, distribute, and sell fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products..

213.     On information and belief, Atofina sold its fluorosurfactant business to Dupont Chemical Solutions Enterprise in September 2002.

214.     On information and belief, Arkema was created in October 2004 when TotalFinaElf spun off Atofina. On information and belief, Arkema is the successor in interest to Atofina and is legally responsible for the liabilities arising from the manufacture of fluorosurfactants used in AFFF by Atofina and its predecessors before September 2002.

215.     Defendant ChemDesign Products Inc. ("ChemDesign") is a corporation organized under the laws of Delaware, with its principal place of business located at 2 Stanton Street, Marinette, WI, 54143.

216.     On information and belief, ChemDesign designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products

217.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a corporation organized under the laws of Delaware, with its principal place of business located at 196122 E County Road 40, Woodward, OK, 73801.

31

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

218.    On information and belief, Deepwater Chemicals designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products

219.    Defendant Dynax Corporation ("Dynax") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523.

220.    On information and belief, Dynax entered into the AFFF market on or about 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical stabilizers containing PFOS, PFOA, and/or their chemical precursors.

221.    On information and belief, Dynax designed, manufactured, marketed, distributed, and sold fluorosurfactants and fluorochemical stabilizers containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

222.    Defendant E.I. du Pont de Nemours & Company ("DuPont") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

223.    Defendant The Chemours Company ("Chemours Co.") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, P.O. Box 2047, Wilmington, Delaware, 19899.

224.    In 2015, DuPont spun off its performance chemicals business to Chemours Co., along with vast environmental liabilities which Chemours Co. assumed, including those related to PFOS and PFOA and fluorosurfactants. On information and belief, Chemours Co. has supplied fluorosurfactants containing PFOS and PFOA, and/or their chemical precursors to manufacturers of AFFF products.

32

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

225. On information and belief, Chemours Co. was incorporated as a subsidiary of DuPont as of April 30, 2015. From that time until July 2015, Chemours Co. was a wholly-owned subsidiary of DuPont.

226. In July 2015, DuPont spun off Chemours Co. and transferred to Chemours Co. its "performance chemicals" business line, which includes its fluoroproducts business, distributing shares of Chemours Co. stock to DuPont stockholders, and Chemours Co. has since been an independent, publicly-traded company.

227. Defendant The Chemours Company FC, LLC ("Chemours FC") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware, 19899.

228. Defendant Corteva, Inc. ("Corteva") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Rd., Wilmington, Delaware 19805.

229. Defendant Dupont de Nemours Inc. f/k/a DowDuPont, Inc. ("Dupont de Nemours Inc.") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, Michigan 48674.

230. On June 1, 2019, DowDuPont separated its agriculture business through the spin-off of Corteva.

231. Corteva was initially formed in February 2018. From that time until June 1, 2019, Corteva was a wholly-owned subsidiary of DowDuPont.

33

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

232.     On June 1, 2019, DowDuPont distributed to DowDuPont stockholders all issued and outstanding shares of Corteva common stock by way of a pro-rata dividend. Following that distribution, Corteva became the direct parent of E. I. Du Pont de Nemours & Co.

233.     Corteva holds certain DowDuPont assets and liabilities, including DowDuPont's agriculture and nutritional businesses.

234.     On June 1, 2019, DowDuPont, the surviving entity after the spin-off of Corteva and of another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., to be known as DuPont ("New DuPont"). New DuPont retained assets in the specialty products business lines following the above-described spin-offs, as well as the balance of the financial assets and liabilities of E.I DuPont not assumed by Corteva.

235.     Defendants E. I. Du Pont de Nemours and Company; The Chemours Company; The Chemours Company FC, LLC; Corteva, Inc.; and DuPont de Nemours, Inc. are collectively referred to as "DuPont" throughout this Complaint.

236.     On information and belief, DuPont designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

237.     On information and belief, 3M and Chemguard also designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

238.     On information and belief, the Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products that were stored, handled, used, trained with,

34

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

tested equipment with, otherwise discharged, and/or disposed at Stewart Air National Guard Base and Stewart International Airport .

### 3.    The PFC Defendants

239.    The term "PFC Defendants" refers collectively to 3M, AGC Chemicals Americas Inc., Archroma U.S., Inc., ChemDesign Products Inc., Chemicals, Inc., Clariant Corporation, Deepwater Chemicals, Inc., E. I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., DuPont de Nemours Inc., and Nation Ford Chemical Company.

240.    Defendant AGC Chemicals Americas, Inc. ("AGC") is a corporation organized and existing under the laws of Delaware, having its principal place of business at 55 East Uwchlan Avenue, Suite 201, Exton, PA 19341.

241.    On information and belief, AGC Chemicals Americas, Inc. was formed in 2004 and is a subsidiary of AGC Inc., a foreign corporation organized under the laws of Japan, with its a principal place of business in Tokyo, Japan.

242.    AGC manufactures specialty chemicals. It offers glass, electronic displays, and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates.

243.    On information and belief, AGC designed, manufactured, marketed, distributed, and sold PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

244.    Defendant Clariant Corporation ("Clariant") is a corporation organized and existing under the laws of New York, with its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

245.    On information and belief, Clariant is the successor in interest to the specialty chemicals business of Sandoz Chemical Corporation ("Sandoz"). On information and belief, Sandoz spun off its specialty chemicals business to form Clariant in 1995.

246.    On information and belief, Clariant designed, manufactured, marketed, distributed, and sold PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

247.    Defendant Archroma U.S., Inc. ("Archroma") is a corporation organized and existing under the laws of Delaware, with its a principal place of business at 5435 77 Center Drive, Charlotte, North Carolina 28217.

248.    On information and belief, Archroma was formed in 2013 when Clariant Corporation divested its textile chemicals, paper specialties, and emulsions business to SK Capital Partners.

249.    On information and belief, Archroma designed, manufactured, marketed, distributed, and sold PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

250.    Defendant Chemicals, Inc. ("Chemicals, Inc.") is a corporation organized and existing under the laws of Texas, with its principal place of business located at 12321 Hatcherville, Baytown, TX 77520.

251.    On information and belief, Chemicals, Inc. supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

36

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

252.    Defendant Nation Ford Chemical Co. ("Nation Ford") is a corporation organized and existing under the laws of South Carolina, with its principal place of business located at 2300 Banks Street, Fort Mill, SC 29715.

253.    On information and belief, Nation Ford supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

254.    On information and belief, 3M, ChemDesign, Deepwater Chemicals, and DuPont also supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

255.    On information and belief, the Fluorochemical Defendants supplied PFCs containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at Stewart Air National Guard Base and Stewart International Airport.

256.    Defendants represent all or substantially all of the market for AFFF/Component Products at Stewart Air National Guard Base and Stewart International Airport.

257.    Plaintiffs have filed Notices of Claim against Defendant Port Authority of New York and New Jersey pursuant to Title 17 of the Unconsolidated Laws of the State of New York, §§ 7107, 7108.

258.    Plaintiffs' claims against Defendants arose at the absolute earliest, on or about August 12, 2016, when the New York State Department of Environmental Conservation ("DEC") declared the Stewart Air National Guard Base a State Superfund Site.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

259.    Plaintiffs' claims continue to arise as injuries are diagnosed and blood testing is taken and the results are received by the New York State Department of Health.

260.    Through the State Superfund designation, DEC announced that PFCs were detected in public and private supply wells of Newburgh, NY, in the vicinity of Stewart Air National Guard Base and Stewart International Airport at levels dangerous to the people's health.

261.    Plaintiffs have complied with all procedural requirements under Title 17 of the Unconsolidated Laws of the State of New York, §§ 7107, 7108, before bringing the instant actions.

## IV.    FACTUAL ALLEGATIONS AS TO ALL COUNTS

262.    Perfluorooctanoic acid (PFOA, also known as C8 or perfluorooctanoate) is a man-made, manufactured chemical not found in nature that belongs to a group of fluorine-containing chemicals called perfluorinated chemicals (PFC's). These chemicals were and are used to make household and commercial products that resist heat and chemical reactions, and repel oil, stains, grease, and water as well as other uses.

263.    In 1947, 3M began producing PFOA via electrochemical fluorination.

264.    Over the years, a number of companies, including but not limited to, Arkema, Asahi, BASF, Clariant, Daikin, DuPont, and Solvay Selexis have manufactured PFOA within the United States.

265.    PFOA is a fluorine-containing chemical that is primarily used in the production of fluoropolymers such as poly-tetra-fluoro-ethylene ("PTFE").

266.    PFOA and PFOS are readily absorbed after consumption or inhalation, and accumulate primarily in the blood stream, kidney and liver.

267.    In 2006, eight major PFOA manufacturers agreed to participate in the U.S. Environmental Protection Agency's ("EPA") PFOA Stewardship Program. The participating

38

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

companies made voluntary commitments to reduce product content and facility emissions of PFOA and related chemicals by 95%, no later than 2010.

268.    PFOS and PFOA get into the environment from industrial facilities that make PFOS or use PFOA to make other products. It also enters the environment when released from PFOA-containing consumer and commercial products during their use and disposal.

269.    PFOS and PFOA can remain in the environment, particularly in water, for many years and can move through soil and into groundwater or be carried in air.

270.    Human studies show associations between increased PFOA and PFOS levels in blood and an increased risk of several health effects, including high cholesterol levels, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

271.    These injuries can arise months or years after exposure to PFOS and PFOA.

272.    PFOS's extreme persistence in the environment and its toxicity, mobility and bioaccumulation potential, pose potential adverse effects to human health and the environment.

**A.    AFFF Background**

273.    Aqueous film forming foam (AFFF) is Class-B firefighting foam. It is water based and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

274.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the U.S. and many parts of the world. AFFF provided better performance over normal Protein foam, which had been in wide spread use since World War II.

275.    AFFF's are synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants. When mixed with water, the resulting solution has the characteristics needed to produce an aqueous film that spreads across the surface of a hydrocarbon

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

fuel. It is this film formation feature that provides fire extinguishment and is the source of the designation, aqueous film forming foam.

276.    The United States Air Force ("USAF") began using PFC-based AFFF in 1970 to extinguish fuel-based fires.

277.    The USAF was never warned of the toxic properties of Defendants' AFFF or the biological and environmental persistence of the PFCs in their AFFF.

278.    Beginning in 2009, the USAF followed the EPA issued short-term provisional health advisory of 400 ppt for PFA and 200 ppt of PFOS. The USAF now applies the current EPA lifetime exposure health advisory of 70 ppt for both PFOA and PFOS.[1]

279.    Fluorosurfactants used in 3M's AFFF were produced by a unique process known as electrochemical fluorination (ECF). The ECF process results in a product that contains and/or breaks down into compounds containing PFOS and/or PFOA.

280.    In the foam industry, concentrates are typically referred to as "3%" or "6%" concentrate, depending on the mixture rate with water. AFFF concentrates contain about 60-90% water and have a fluorine content of about 0.3-1.8%.

**B.    Defendants' Knowledge of the Threats to Public Health and the Environment Posed by PFCs**

281.    On information and belief, by at least the 1970s 3M knew or should have known that PFOA and PFOS are mobile and persistent, bioaccumulative and biomagnifying, and toxic.

282.    Upon information and belief, 3M concealed from the public and government agencies its knowledge of the risk of harm posed by PFCs.

283.    In 1975, 3M concluded that PFOS was present in the blood of the general population. Since PFOA and PFOS are not naturally occurring, this finding should have alerted

---

[1] *Air Force applies new EPA guidance*, Air Force Civil Engineer Center Public Affairs, May 19, 2016.

40

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

3M to the possibility that their products were a source of this PFOS. The finding also should have alerted 3M to the possibility that PFOS might be mobile, persistent, bioaccumulative, and biomagnifying, as those characteristics could explain the absorption of PFOS in blood from 3M's products.

284.    In 1976, 3M found PFOA in the blood of its workers. This finding should have alerted 3M to the same issues raised by the findings regarding PFOS in the prior year.

285.    A 1978 study by 3M showed that PFOA reduced the survival rate of fathead minnow fish eggs.

286.    Other studies by 3M in 1978 showed that PFOS and PFOA are toxic to rats, and that PFOS is toxic to monkeys. In one study in 1978, all monkeys died within the first few days of being given food contaminated with PFOS.

287.    Studies by 3M after the 1970s also showed adverse effects from exposure to PFOA and PFOS.

288.    In a 1983 study, for example, 3M found that PFOS caused the growth of cancerous tumors in rats.

289.    A study proposal by 3M in 1983 stated that the resistance to degradation of PFOA and PFOS made them "potential candidates for environmental regulations, including further testing requirements under laws such as the Toxic Substances Control Act." 3M Environmental Laboratory (EE & PC), Fate of Fluorochemicals - Phase II, at p.6 (E. A. Reiner, ed. May 20, 1983).

290.    A 1997 material safety data sheet ("MSDS") for a non-AFFF product made by 3M listed its only ingredients as water, PFOA, and other per-fluoroalkyl substances and warned that the product includes "a chemical which can cause cancer." The MSDS cited "1983 and 1993

41

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM    INDEX NO. EF003519-2022
NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/30/2022

studies conducted jointly by 3M and DuPont" as support for this statement. On information and belief, 3M's MSDSs for AFFF did not provide similar warnings.

291.    Federal law requires chemical manufacturers and distributors to immediately notify the United States Environmental Protection Agency ("EPA") if they have information that "reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment." Toxic Substances Control Act ("TSCA") § 8(e), 15 U.S.C. § 2607(e).

292.    3M did not comply with its duty under TSCA, and in April 2006 it agreed to pay EPA a penalty of more than $1.5 million for its failure to disclose studies regarding PFOA or PFOS and other per-fluoroalkyl substances dating back decades, among other things.

293.    On information and belief, all defendants knew or should have known that in its intended and/or common use, AFFF containing PFOA or PFOS would very likely injure and/or threaten public health and the environment. On information and belief, this knowledge was accessible to all defendants. For example, in 1970 a well-established firefighting trade association was alerted to the toxic effects on fish of a chemical compound related to PFOS. On information and belief, at least the following defendants are and/or were members of this trade association: 3M, Tyco/Ansul, Chemguard, and National Foam/Angus.

294.    Additionally, on information and belief, all defendants knew or should have known that their AFFF products and the PFOA and PFOS the products contained, easily dissolve in water, because the products were designed to be mixed with water; are mobile, because the products were designed to quickly form a thin film; resist degradation, because that is the nature of the products' chemical composition, and on information and belief the products had long shelf-lives; and tend

42

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

to bioaccumulate, because studies regarding the presence of substances with carbon-fluorine bonds in the blood of the general population were publicly available beginning in at least 1976.

295.    The Defendants failed to warn and share information with all of its customers on the impacts of their products to the quality of unprotected water sources.

296.    The Defendants' products created major waste management problems which they absolved themselves of, providing their customers with no practical guidance and instructions on how to deal with.

297.    Some or all of the defendants understood how stable the fluorinated surfactants used in their AFFF formulations are when released into the environment from the first sale to their customers but neither warned customers nor provided reasonable instruction on how to manage wastes generated from use of their products. The persistence and contaminating nature of the perfluorinated surfactant 3M made that went into its AFFF products was well understood prior to the commercial applications of these surfactants at 3M's Cottage Grove facility in Minnesota.

298.    The inventor of 3M's surfactants was J. H. Simons. Simons' 1948 patent (Simons[2]) reports: PFCs are "non-corrosive, and of little chemical reactivity"; "do not react with any of the metals at ordinary temperatures and react only with the more chemically reactive metals such as sodium, at elevated temperatures".

299.    Simons reported that the surfactants that 3M specified for its AFFF do not react with other compounds or reagents due to the blanket of fluorine atoms surrounding the carbon skeleton of the molecule. These highly stable chemicals were developed to provide non-reactive solid and liquid chemicals with low surface tensions that could withstand high temperatures and

---

[2] Simons, J. H., U.S. Patent No. 2,447,717. August 24, 1948.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

would not react with highly reactive materials such as oxygen (see Simons[3], Bryce[4]). 3M understood that the stability of the carbon-to-fluorine bonds and the lack of attraction for other chemical species prevent these surfactants from undergoing further chemical reactions or degrading under natural processes in the environment (see Simons 1950 published work[5]).

300.    Bryce, an employee of 3M, published an authoritative treatise stating "[t]his chemical stability also extends itself to all types of biological processes; there are no known biological organisms that are able to attack the carbon-fluorine bond in a fluorocarbon" (Bryce (1964)).

301.    The thermal stability of 3M's surfactants was understood prior to commercial production. In 1947, two researchers reported that fluorocarbon compounds did not degrade at temperatures as high as 500° C (932°F), even in the presence of catalytic materials (Grosse, et al..[6]). Simons' patent application further discloses that the chemicals he invented were thermally stable at temperatures up to 750° C (1382° F) (see Simons (1948); Simons et al., (1949)). These chemicals are non-reactive and thermally stable due to the strength and stability of the carbon-to-fluorine bonds (Simons (1949); Bryce (1950)[7]). Additional research by 3M expanded the understanding of the thermal stability of perfluorocarbon compounds. Bryce explained that the fracture of the carbon-to-carbon bonds may take place at very high temperatures from 600 to 1000° C (1112 to 1832° F) depending on the carbon chain length. He also reported that the carbon-to-

---

[3] Simons, J. H., 1949. Fluorocarbons. Scientific American, Inc., 181(5): 44-47.
[4] Bryce, H. G., 1964. Industrial and Utilitarian Aspects of Fluorine Chemistry. Fluorine Chemistry. 5(4): 295-498.

[5] Simons, J. H., 1950. Fluorocarbons and Their Production. Fluorine Chemistry, 1(12): 401-422.
[6] Grosse, A. V., et al., 1947. Properties of Fluorocarbons. Industrial and Engineering Chemistry, 39(3): 367-374. March.

[7] Bryce, T. J., 1950. Fluorocarbons - Their Properties and Wartime Development. Fluorine Chemistry, 1(13): 423-462.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

fluorine bond is much stronger and can require temperatures of 1200° C (2192° F) to break (Bryce, 1964).

302.    Nowhere in any Material Safety Data Sheet for any of the defendants' products is information on the thermal stability of their surfactants disclosed. Failure to disclose knowledge of how stable the chemical ingredients in the AFFF product to customers is a failure to warn just how indestructible the surfactant ingredients are when released to unprotected water sources and even treatment plants. The remarkable thermal stability of the surfactants used in defendants' formulations means that there is a risk that the customer has to deal with because the surfactant ingredients are incredibly stable. The surfactant additive is so stable that it is indestructible under normal use and environmental conditions; facts which are known by AFFF manufacturers and not apparent to the users of these products.

303.    Defendant 3M was capable of producing a variety of perfluorinated products at its Cottage Grove facility (PFOS, PFOA, and PFBA, in addition to the salts of PFOS, PFOA, and PFBA). All of these surfactants were understood by 3M to readily dissolve in water. In 1962, testing of PFOS-based surfactants indicated that these compounds were very soluble (Guenthner, et al.[8]). Numerous PFCs manufactured by 3M, including fluorocarbon carboxylic acids and fluorocarbon sulfonic acids such as PFOA and PFOS readily dissolve when mixed with water (Bryce (1964)). 3M knew by 1964 that when dissolved, fluorocarbon carboxylic acids and fluorocarbon sulfonic acids dissociated to form highly stable perfluorocarboxylate and perfluorosulfonate ions (Bryce (1964)). Later studies by 3M on the adsorption and mobility of FC-

---

[8] Guenthner, R. A., et al., 1962. Surface Active Materials From Perfluorocarboxylic and Perfluorosulfonic Acids, 1(3): 165-168.

45

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM    INDEX NO. EF003519-2022

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/30/2022

95 and FC-143 (the ammonium salt of PFOA) in soils indicated very high solubility and very high mobility in soils for both compounds.[9]

304.    Defendant 3M understood from the earliest days it acquired the Simons' patents that the surfactants it commercialized had extremely limited reactivity and that the high thermal stability of the perfluorinated carbon chain inhibited degradation in the environment (Bryce, 1950). The breaking of a carbon-to-fluorine bond requires the input of large amounts of energy to overcome the chemical bond between carbon and fluorine. Chemical and physical processes occurring in nature lack sufficient energy to break carbon-to-fluorine bonds and without this input of energy, the carbon-to-fluorine bonds remain intact.

305.    Bryce wrote "This chemical stability also extends itself to all types of biological processes; there are no known biological organisms that are able to attack the carbon-fluorine bond in a fluorocarbon" (Bryce, 1964). 3M understood the chemical stability of the carbon-to-fluorine bond. It knew that its surfactants were immune to chemical and biological degradation in soils and groundwater.

306.    A 1971 internal memo by H.G. Bryce states that "the thesis that there is 'no natural sink' for fluorocarbons obviously demands some attention." Hence, 3M understood at the very least that when its AFFF product ingredient was released to the environment it basically will never degrade[10].

307.    In natural environments, the surfactants do not undergo degradation of the carbon-to-fluorine bonds of the perfluorinated carbon chain. The non-fluorinated, functional group of the chemical will partially degrade, yielding recalcitrant products such as PFOS, PFOA, and PFBA, which then resist further degradation. Basic weathering and degradation reactions, such as

---

[9] 3M, 1978 [3MA10036129]
[10] 3M, 1971 [3MA02496587]

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM    INDEX NO. EF003519-2022

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/30/2022

hydrolysis, occur at the non-fluorinated, functional group end of the molecule, producing the original fluorocarbon compound (Pearlson[11]). Depending on the surfactant these reduce to PFOS, PFOA, or PFBA.

308.    Defendant 3M knew that the perfluorinated components in its AFFF product(s) when released to the environment would not degrade the perfluorinated carbon structure, but would remain intact and persist (Bryce, 1950). Nearly 30 years later and after the establishment of a robust market of AFFFs using such ingredients, defendant 3M finally got around to looking at the environmental risks its products pose. See a 1979 3M study[12] which reports on its surfactant FC95 citing multiple studies on toxicity and biodegradability. The study reports that "F-95 was found to be completely resistant to biological test conditions... it appears that waterways are the environmental sink for FC95..."

309.    A 1978 3M biodegradation study[13] reports "... the results of the quite extensive study strongly suggests that FM3422 is likely to persist in the environment for extended period unaltered by metabolic attack."

310.    3M and other defendants chose not to disclose their knowledge of the inability of their surfactants to break down in the natural environment. They failed to warn that their products can contaminate drinking water sources for many decades despite their knowledge that this was a likely outcome from the use of their products.

311.    All of the defendants are sophisticated and knowledgeable in the art and science of formulating AFFF products. They understood far more about the properties of and the biodegradability of their additives than any other customer. They chose not to use their knowledge

---

[11] Pearlson, W. H., 1950. Fluorocarbon Derivatives. Fluorine Chemistry, 1(14): 463-522.
[12] 3MA10066577
[13] 3MA00717615

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

to design safer products. See Ansul[14] which wrote the following about the biodegradation of AFFF: Biodegradation is a "measure of how completely a substance breaks down in the environment. The biodegradability of a chemical is expressed as a percentage determined by dividing the BOD by the COD and multiplying by 100. The chemical oxygen demand, COD, is the amount of oxygen needed to completely break a chemical down to its most oxidized state (for example: $CO_2$, $H_2O$, and HF) and is a measured analytical value. The biochemical oxygen demand, BOD, is an empirical test that measures a relative oxygen requirement. This test measures the oxygen required for the biochemical degradation of organic and inorganic material... For firefighting foams, this test is conducted for 20 days as opposed to the usual five days for other chemicals because the bacteria requires a longer time to acclimate to the test solution of the foam... B[b]iodegradation is the percentage ratio of BOD/COD. If that resulting number is higher than 50%, the chemical is determined to be readily biodegradable. If it is below 15%, the chemical is determined to be not biodegradable. Ansul summarized its explanation by noting: If BOD/COD > 50%, then biodegradable; If BOD/COD < 15%, then NOT biodegradable.

312.    The information that Ansul published and widely distributes to its customers is both misleading and deceitful. Ansul's explanation ignores the fact that while the foam stabilizer additives biodegrade, perfluorinated surfactants do not. Dimitrov, et al.[15] report that PFAS when present in the environment does not undergo any further chemical, microbial or photolytic degradation or breakdown. Long before Dimitrov, 3M understood this as shown by its explanation of biodegradability in a 1976 study, noting that hydrocarbon components of a perfluorinated admixture will degrade leaving behind the perfluorinated components which do not biodegrade.[16]

---

[14] Ansul Inc., Environmental Aspects of AFFF and AR-AFFF, White Paper 1017, 2003
[15] *Ibid*, Dimitrov, S., et al. 2004.

[16] 3MA01252037

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

Once these substances undergo biotic or abiotic degradation, the perfluorinated moiety that remains will be PFOS. The rate of degradation to PFOS is not considered significant and over time these substances are all expected to degrade in the environment to environmentally persistent PFOS. These were facts that were known by 3M in the 1960s. These were facts that other AFFF manufacturers knew or should have known; and if they didn't then they simply created their products blindly and without concern as to whether they could cause harm to unprotected water resources and place communities at risk.

313.    Defendant 3M along with Ansul and likely others had intimate understanding of the poor biodegradation of their fluorochemical compounds. A 1976 study, for example, observed no biodegradation of FC-95, the potassium salt of PFOS. 3M characterized the result of the study "unsurprising" in light of the fact that "[b]iodegradation of FC 95 is improbable because it is completely fluorinated".[17]

314.    The Ansul Company (Tyco), published a report in 1977 titled Environmentally Improved AFFF.[18] This report acknowledges that AFFFs were understood to be environmentally damaging and could pose potential negative impacts to groundwater quality. Ansul wrote: "The purpose of this work is to explore the development of experimental AFFF formulations that would exhibit reduced impact on the environment while retaining certain fire suppression characteristic…improvements [to AFFF formulations] are desired in the environmental area, i.e., development of compositions that have a reduced impact on the environment without loss of fire suppression effectiveness." Its study showed it had the ability to reformulate its AFFF products to be biodegradable, but there is no evidence that any company bothered to do so.

---

[17] 3M, 1976 [3MA01252037]

[18] Ansul Co., Final Report: Environmentally Improved AFFF, N00173-76-C-0295, Marinette, WI, Dec. 13, 1977

49

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

315.    Also, in 1979 Defendant 3M carried out a comprehensive biodegradation and toxicity study covering investigations between 1975 and 1978.[19] More than 10 years after 3M began selling its AFFF products it wrote "there has been a general lack of knowledge relative to the environmental impact of these chemicals." This report ominously discloses "If these materials are not biodegradable, what is their fate in the environment?"

## C.    The Toxic Nature of Manufacturer Defendants' AFFF Is Uncovered and Leads to Lower Thresholds for PFAS in Drinking Water

316.    As discussed above, neither 3M nor, on information and belief, the other defendants, complied with their obligations to notify EPA about the "substantial risk of injury to health or the environment" posed by their AFFF products containing PFOS/A. See TSCA § 8(e).

317.    In or around 1998, EPA began investigating the safety of PFOA and PFOS after some limited disclosures by 3M and others.

318.    Beginning in 2009, EPA issued health advisories about the levels of exposure to PFOA and PFOS in drinking water that it believed were protective of public health. As described on EPA's website, "health advisories are non-enforceable and non-regulatory and provide technical information to states [,] agencies and other health officials on health effects, analytical methodologies, and treatment technologies associated with drinking water contamination." Drinking Water Health Advisories for PFOA and PFOS, What's A Health Advisory, available at https://www.epa.gov/ground-water-and-drinking-water/drinking-waterhealth-advisories-pfoa-and-pfos (last visited June 5, 2018).

319.    The recommendations in EPA's health advisories evolved as EPA learned more about PFOA and PFOS. New York followed these changing advisories in implementing its own approach to investigating contamination from PFOA and PFOS.

---

[19] 3MA00326828

50

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

320.    On January 8, 2009, EPA issued Provisional Health Advisory Level (HAL) for PFOA and PFOS, advising that "action should be taken to reduce exposure" to drinking water containing levels of PFOA and PFOS exceeding 400 parts per trillion ("ppt") and 200 ppt, respectively. Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS), available at https://www. cpa.gov/sites/productionlfiles/2015 0-9/documents/pfoa- pfos-provisional.pdf, at p. 1, n. 1 (last visited June 5, 2018).

321.    In the May 2015 "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs) ," scientists and other professionals from a variety of disciplines, concerned about the production and release into the environment of PFOA's, called for greater regulation, restrictions, limits on the manufacture and handling of any PFOA containing product, and to develop safe non-fluorinated alternatives to these products to avoid long-term harm to human health and the environment.

322.    On May 25, 2016, the EPA released a HAL for drinking water and health effects support documents for PFOS and PFOA.[20] *See* Fed. Register, Vol. 81, No. 101, May 25, 2016. The EPA developed the HAL to assist governmental officials in protecting public health when PFOS and PFOA are present in drinking water. The EPA HAL identified the concentration of PFOS and PFOA in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure at 0.07 ppb or 70 ppt. The HAL was based on peer-reviewed studies of the effects of PFOS and PFOA on laboratory animals (rats and mice) and was also informed by epidemiological studies of human populations exposed to PFOS. These studies indicated that exposure to PFOS and PFOA over the HAL could result in adverse health effects, including:

---

[20] *See* Fed. Register, Vol. 81, No. 101, May 25, 2016, Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate.

51

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

    a.    Developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations);

    b.    Cancer (testicular and kidney);

    c.    Liver effects (tissue damage);

    d.    Immune effects (e.g., antibody production and immunity);

    e.    Thyroid disease and other effects (e.g., cholesterol changes).

323.    In 2016, the National Toxicology Program of the United States Department of Health and Human Services ("NTP") and the International Agency for Research on Cancer ("IARC") both released extensive analyses of the expanding body of research regarding the adverse effects of PFCs. The NTP concluded that both PFOA and PFOS are "presumed to be an immune hazard to humans" based on a "consistent pattern of findings" of adverse immune effects in human (epidemiology) studies and "high confidence" that PFOA and PFOS exposure was associated with suppression of immune responses in animal (toxicology) studies.[21]

324.    IARC similarly concluded that there is "evidence" of "the carcinogenicity of . . . PFOA" in humans and in experimental animals, meaning that "[a] positive association has been observed between exposure to the agent and cancer for which a causal interpretation is . . . credible."[22]

325.    California has listed PFOA and PFOS to its Proposition 65 list as a chemical known to cause reproductive toxicity under the Safe Drinking Water and Toxic Enforcement Act of 1986.[23]

---

[21] See U.S. Dep't of Health and Human Services, Nat'l Toxicology Program, *NTP Monograph: Immunotoxicity Associated with Exposure to Perfluorooctanoic Acid or Perfluorooctane Sulfonate* (Sept. 2016), at I, 17, 19, available at https://ntp.niehs.nih.gov/ntp/ohat/pfoa_pfos/pfoa_pfosmonograph_508.pdf

[22] See Int'l Agency for Research on Cancer, IARC Monographs: Some Chemicals Used as Solvents and in Polymer Manufacture (Dec. 2016), at 27, 97, available at http://monographs.iarc.fr/ENG/Monographs/vol110/mono110.pdf.

[23] California Office of Environmental Health Hazard Assessment, Chemicals Listed Effective Nov. 10, 2017 as

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

326. The United States Senate and House of Representatives passed the National Defense Authorization Act in November 2017, which included $42 Million to remediate PFC contamination from military bases, as well as devoting $7 Million toward the Investing in Testing Act, which authorizes the Center for Disease Control and Prevention ("CDC") to conduct a study into the long-term health effects of PFOA and PFOS exposure.[24] The legislation also required that the Department of Defense submit a report on the status of developing a new military specification for AFFF that did not contain PFOS or PFOA.[25]

327. In June 2018, the Agency for Toxic Substances and Disease Registry ("ATSDR") and EPA released a draft toxicological profile for PFOS and PFOA and recommended the drinking water advisory levels be lowered to 11 ppt for PFOA and 7 ppt for PFOS.[26]

328. On February 20, 2020, the EPA announced a proposed decision to regulate PFOA and PFOS under the Safe Drinking Water Act, which the agency characterized as a "key milestone" in its efforts to "help communities address per- and polyfluoroalkyl substances (PFAS) nationwide."[27] Following a public comment period on its proposed decision, the EPA will decide whether to move forward with the process of establishing a national primary drinking water regulation for PFOA and PFOS.

---

Known to the State of California to Cause Reproductive Toxicity: Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS), Nov. 9, 2017, available at https://oehha.ca.gov/proposition-65/crnr/chemicals-listed-effective-november-10-2017-known-state-california-cause.

[24] National Defense Authorization Act for Fiscal Year 2018, H.R. 2810, 115th Congress (2017), available at https://www.congress.gov/115/plaws/publ91/PLAW-115publ91.pdf.

[25] Id.; see also U.S. Department of Defense, Alternatives to Aqueous Film Forming Foam Report to Congress, June 2018, available at https://www.denix.osd.mil/derp/home/documents/alternatives-to-aqueous-film-forming-foam-report-to-congress/.

[26] ATSDR, *Toxicological Profile for Perfluoroalkyls: Draft for Public Comment* (June 2018), *available at* https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf.

[27] Press Release, *EPA Announces Proposed Decision to Regulate PFOA and PFOS in Drinking Water*, Feb. 20, 2020, *available at* https://www.epa.gov/newsreleases/epa-announces-proposed-decision-regulate-pfoa-and-pfos-drinking-water.

53

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

329.    On July 31, 2020, New York's Governor announced that the State had adopted the New York State Department of Health's proposed rule that set an MCL of 10 ppt for PFOA and PFOS in public drinking water supplies. The MCL for PFOA and PFOS became effective on August 26, 2020.

330.    On June 15, 2022, the EPA released new drinking water health advisory levels (HALs) for four PFAS, including new interim HALs for PFOS and PFOA that departed significantly from the 2016 EPA HAL they replaced.[28] See Fed. Register, Vol. 87, No. 36848, June 21, 2022. Specifically, EPA issued HALs of 0.004 ppt for PFOA and 0.02 ppt for PFOS,[29] which collectively accounted for only a small fraction of the combined 70 ppt HAL that preceded them. Importantly, EPA set these interim HALs at levels below which PFOS and PFOA can be measured using current analytic methods, meaning that the mere detection of PFOS or PFOA in a water provider's system would be sufficient on its own to exceed the new levels.

331.    As support for its decision, EPA explained that the science had evolved since 2016 and that the new interim HALs for PFOS and PFOA were "based on human studies" that "found associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, human development (e.g., decreased birth weight), and cancer." [30] Specifically, EPA had performed updated health effects analyses for PFOS and PFOA to provide support for the drinking water regulations the agency planned to adopt for the two chemicals under the SDWA. Based on these analyses, EPA concluded that "the levels at which negative health effects could occur are much lower than previously understood when EPA issued the 2016 health

---

[28] See Fed. Register, Vol. 87, No. 36848, June 21, 2022, Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances.
[29] Id.
[30] EPA, Drinking Water Health Advisories for PFAS Fact Sheet for Communities at 1-2 (June 2022), available at https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-communities.pdf.

54

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

advisories for PFOA and PFOS – including near zero for certain health effects."[31]  For this reason, the agency determined there was a "pressing need to provide updated information on the current best available science to public health officials prior to finalization of the health effects assessment."[32]

332.    Because the referenced health analyses are still undergoing final review by EPA's Science Advisory Board, the agency has stated that the new interim HALs for PFOS and PFOA are subject to change. EPA has indicated, however, that it does not anticipate any changes resulting in revised HALs for PFOS and PFOA that are greater than the 4 ppt minimum reporting level33 that applies to Public Water Systems.[34]

**D.    AFFF Usage in the City of Newburgh Area**

333.    Upon information and belief, 3M, Tyco, National Foam and Chemguard each manufactured AFFF containing PFCs, among other reasons, for sale.

334.    3M, Tyco, National Foam and Chemguard sold AFFF that was used at Stewart Air National Guard Base and at what is today the Stewart International Airport.

335.    It is estimated that 75% of the military AFFF inventory is an ECF-based product. This is not surprising since for most of the past 30 years 3M was the primary supplier of AFFF.

---

[31] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Public Water Systems* at 2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-water-system.pdf.
[32] EPA Office of Water, EPA Doc. No. 822-R-22-003, *INTERIM Drinking Water Health Advisory: Perfluorooctanoic Acid (PFOA) CASRN 335-67-1* at 18 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/interim-pfoa-2022.pdf; EPA Office of Water, EPA Doc. No. 822-R-22-004, *INTERIM Drinking Water Health Advisory: CASRN 1763-23-1* at 18 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/interim-pfos-2022.pdf.
[33] As EPA's website explains, the Minimum Reporting Level ("MRL") for Unregulated Contaminant Monitoring Rule (UCMR) 5 is the minimum quantitation level that, with 95 percent confidence, can be achieved by capable analysts at 75 percent or more of the laboratories using a specified analytical method. The MRLs in EPA's chart are based on the UCMR 5 requirement to use EPA Method 533.
[34] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Public Water Systems* at 2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-water-system.pdf.

55

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

336.    At any given time during its operation, Stewart Air National Guard Base and Stewart International Airport housed and used thousands of gallons of AFFF concentrate manufactured by 3M, Tyco, National Foam and Chemguard.

337.    The AFFF was expected to reach Stewart Air National Guard Base and Stewart International Airport without substantial change in the condition in which it was sold to the NYANG, and it did.

338.    The U.S. Air Force, NYANG, and civilian agencies conducted training exercises at Stewart International Airport and the Air National Guard Base including firefighting and explosion training that used of AFFF manufactured by 3M, Tyco, National Foam and Chemguard.

339.    From 2007 to date, Defendant Port Authority of New York and New Jersey was the lease, controller and operator of the Airport where the exercises took and were taking place using AFFF containing PFOA and PFOS.

340.    Additionally, from 2007 through date, Defendant Port Authority operated the airport and had SPDES permits for their discharge which did not permit the discharge of AFFF.

341.    During this time, AFFF containing PFOS and PFOA and/or its breakdown products was being discharged from the Port Authority's Stewart International Airport from its leased property and in violation of their SPDES permits.

342.    Upon information and belief, the instructions, warning labels, and material safety data sheets that were provided with the AFFF by 3M, Tyco, National Foam and Chemguard which, at least at significant times, did not fully describe the health and environmental hazards of AFFF which 3M, Tyco, and National Foam knew or should have known existed.

343.    Upon information and belief, 3M, Tyco, National Foam and Chemguard had known of these health and environmental hazards for years. For example, by the mid-1980s, 3M began a

56

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

major program to review personnel handling of fluorochemicals and determined that fluorochemicals could bioaccumulate.

344.    In 1993, a published peer-reviewed study of 3M workers exposed to C-8 (PFOA) at a 3M manufacturing facility in Minnesota reported that "ten years of employment in exposed jobs was associated with a 3.3 fold increase ... in prostate cancer mortality compared to no employment in [C-8] production. ... If prostate cancer mortality is related to [C-8, C-8] may increase prostate cancer mortality by altering reproductive hormones in male workers," thus making clear to Defendant by at least 1993 that C-8 was linked to increased cancer rates in C-8-exposed humans.

345.    3M, who was the predominant manufacturer of AFFF, ceased production of PFOS-based AFFF in 2002. Under pressure from the EPA, on May 16, 2000, 3M announced it would phase out production of two synthetic chemicals, PFOS and PFOA, that it had developed more than fifty years earlier.[35]

346.    An EPA internal memo on the day of 3M's phase out announcement stated: "3M data supplied to EPA indicated that these chemicals are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term...[PFOS] appears to combine Persistence, Bioaccumulation, and Toxicity properties to an extraordinary degree."[36]

---

[35] 3M press release, "3M Phasing Out Some Of Its Specialty Materials", May 16, 2000, http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0641.pdf#page=1

[36] EPA internal memo, "Phaseout of PFOS", May 16, 2000, http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0629.pdf#page=2

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

347.    In contrast, 3M's news release insisted that "our products are safe" while extolling their "principles of responsible environmental management" as driving the cessation of production.[37]

**E.    Discovery of PFOS Contamination in City of Newburgh Area**

348.    Between December 2013 and October 2014, the City of Newburgh tested the drinking water for PFOS as part of the U.S. Environmental Protection Agency's testing program for unregulated contaminants.

349.    The test results for PFOS and PFOA were reported to the EPA in 2014 and 2015.

350.    The NYDOH reviewed the data in early 2016 and retested the drinking water in March 2016. The NHDOH testing confirmed the presence of PFOS and PFOA but were below the health advisory level at the time.

351.    In March 2016, groundwater samples were also collected at the Stewart Air National Guard Base and Stewart International airport and analyzed for PFCs.

352.    The sample program showed that groundwater downgradient of the base has been impacted by PFOS and PFOA, likely associated with aqueous film forming foam (AFFF) which has been used at the base for fire-fighting, fire training, and fire suppression systems.

353.    Samples collected from existing monitoring wells at the Stewart Air National Guard Base showed concentrations as high as 3,160 parts per trillion (ppt).

354.    In May of 2016, the City of Newburgh declared a state of emergency due to the PFOS levels and stopped using Lake Washington as their source of potable water.

355.    In August 2016, Plaintiffs were advised that their household water was contaminated with PFCs at hazardous levels and advised to seek alternate drinking water supplies.

---

[37] 3M press release, "3M Phasing Out Some Of Its Specialty Materials", May 16, 2000,
http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0641.pdf#page=1

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

356.    Groundwater wells, retention ponds and soil tested within the Stewart Air National Guard Base Area have shown elevated concentrations of PFOS and PFOS from the AFFF.

## V.    MARKET SHARE LIABILITY, ALTERNATIVE LIABILITY, CONCERT OF ACTION, ENTERPRISE LIABILITY

357.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

358.    Defendants in this action are manufacturers that control a substantial share of the market for AFFF products containing PFOA and/or PFOS in the United States and are jointly responsible for the contamination of Plaintiffs' drinking water and for causing the damages and injuries complained of in this Complaint.

359.    Market share liability attaches to all Defendants and the liability of each should be assigned according to its percentage of the market for AFF products containing PFOA and/or PFOS at issue in this Complaint.

360.    PFOA and PFOS are fungible; it is impossible to identify the exact Defendant who manufactured any given batch of PFOA/S found free in the drinking water, and each of these Defendants participated in a state-wide and national market for PFOA and/or PFOS during the relevant time.

361.    Concert of action liability attaches to all Defendants, each of which participated in a common plan to commit the torts alleged herein and each of which acted tortuously in pursuance of the common plan to knowingly manufacture and sell inherently dangerous AFFF containing PFOA and PFOS.

362.    Enterprise liability attaches to all of the named Defendants for casting defective products into the stream of commerce.

59

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM    INDEX NO. EF003519-2022

NYSCEF DOC. NO. 1                                                         RECEIVED NYSCEF: 06/30/2022

## VI.    CAUSES OF ACTION FOR INDIVIDUAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION:
#### Negligence

363.    Plaintiff hereby repeats, realleges, and reiterates each allegation in the preceding paragraphs as if fully restated herein.

364.    This cause of action is brought pursuant to New York law.

365.    Negligence may exist both as an omission as well as an affirmative act. A cause sounding in negligence allows for the recovery for an injury that was proximately caused by another's violation of a duty of reasonable care.

366.    Defendants knew or should have known that exposure to PFOS and PFOA was hazardous to the environment and to human health.

367.    Knowing of the dangerous and hazardous properties of the AFFF, Defendants had the duty to warn of the hazards associated with AFFF entering and poisoning the environment and drinking water.

368.    Defendants knew or should have known that safety precautions would be required to prevent the release of PFOS and PFOA into the surrounding environment.

369.    Defendants owed a duty to Plaintiffs to ensure that AFFF was used in a manner so as to prevent the exposure from creating an imminent and substantial health threat.

370.    Upon learning of the release of the contaminants, Defendants owed Plaintiffs a duty to warn and notify Plaintiffs of the release of the contamination before it injured Plaintiffs and and their property and/or to act reasonably to negate and/or minimize the damage to Plaintiffs and their property.

371.    Defendants breached their duty by allowing PFOS and PFOA to be released into the drinking water (both the municipal and private wells) of the City of Newburgh Area through

60

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

their manufacturing of the AFFF and failure to warn and notify the end users of AFFF about the danger that PFOS and PFOA would enter into the environment and drinking water supplies.

372.    As such, the Defendants, negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally breached their legal duties to the Plaintiffs, causing the contamination of drinking water in and around the residences of Plaintiffs.

373.    Defendants further breached the duties owed to the Plaintiffs by failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

374.    Defendants' failure to notify the Plaintiffs in a timely manner of the contamination of the City of Newburgh Area's drinking water, and, consequently, the presence of PFOA and PFOS in the real properties of Plaintiffs constitutes another breach of the duties that Defendant owed the Plaintiffs.

375.    Defendants' breaches of their duties were direct and proximate causes of Plaintiffs' damages and injuries to their homes and health.

376.    Defendant's breaches of their duties caused the drinking water in both Lake Washington and private wells to become contaminated with unsafe and dangerous levels of PFOS and PFOA, which was then ingested by Plaintiffs.

377.    Further, Defendants' breach of their duty to timely notify the community and act reasonably in warning of the presence of PFOS and PFOA in AFFF, Plaintiffs were forestalled from undertaking effective and immediate remedial measures, and Plaintiffs have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

61

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

378.    Plaintiffs have suffered foreseeable injuries and damages as a proximate result of said Defendants' negligent breach of their duties as set forth above. At the time Defendant breached their duties to Plaintiffs, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs so apparent as to entitle them to be protected against such actions or inactions.

379.    Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries to their persons and property, in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs to their original position, including but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, injuries to persons, and actual, consequential, and nominal damages, flowing from the negligence which are the natural and proximate result of Defendant conduct in an amount to be proved at trial.

## AS AND FOR A SECOND CAUSE OF ACTION:
### Private Nuisance (Private Well Owners Only)

380.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

381.    This cause of action is brought pursuant to the laws of New York.

382.    Plaintiffs, as described above, are owners of real property with the right of possession.

383.    Defendants, through the negligent, reckless and/or intentional acts and omissions alleged herein, have contaminated the private wells of these Plaintiffs.

384.    At all times relevant to the present cause of action, Defendant Port Authority of New York and New Jersey was the lease, controller and operator of Stewart International Airport

62

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

where AFFF containing PFOA and PFOS was used for decades, and which discharged and/or otherwise emanated PFOS contamination to Plaintiffs' drinking water.

385.    At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that large quantities of PFOA and PFOS would and/or could be introduced into the properties and water well of Plaintiffs.

386.    The above-described affirmative, voluntary, and intentional acts were performed with the reckless disregard of the potential for PFOA and PFOS to be disbursed through the water and onto the land and property of Plaintiffs.

387.    Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused an unknown quantity of PFOS and possibly other toxic substances to be released into their drinking water.

388.    The introduction of unknown quantities of PFOA and PFOS onto the property and into the water wells of the Plaintiffs unreasonably interfered with the use and enjoyment of their property.

389.    The contamination of Plaintiffs' drinking water has interfered with the rights of Plaintiffs to use and enjoy their property.

390.    Indeed, this interference is substantial in nature. It has caused and is causing Plaintiffs to, inter alia, refrain from using water to drink, cook, or bathe, which has, in turn, caused significant inconvenience and expense. Defendants' conduct has also substantially interfered with Plaintiffs' ability to enjoy their property, to avail themselves of their property's value as an asset and/or source of collateral for financing, and to use their property in the manner that each Plaintiff so chooses.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

391.    Defendants' negligent, reckless and/or intentional acts and omissions were unreasonable and constitute a continuous invasion of the property rights of Plaintiffs.

392.    The potential danger from the drinking water at their residences has caused the Plaintiffs significant inconvenience and expense, which will continue to run into the future.

393.    This constitutes a substantial interference with the use of the properties such that it is offensive and has caused significant inconvenience or annoyance.

394.    By reason of the foregoing, Defendants are liable to Plaintiffs for the damages that they have suffered as a result of Defendants' actions, the amount of which will be determined at trial, plus reasonable attorneys' fees and costs.

### AS AND FOR A THIRD CAUSE OF ACTION:
### Failure to Warn

395.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

396.    This cause of action is brought pursuant to New York law.

397.    Defendant Port Authority of New York and New Jersey failed to employ reasonable care that a reasonably prudent person would have under the circumstances by allowing AFFF containing PFOS and PFOA to be transported, used, utilized, stored, dumped, handled and/or disposed while operating Stewart International Airport, in a manner that led to their release into the soil and local groundwater.

398.    Defendant Port Authority of New York and New Jersey knew or should have known that the manner in which AFFF was transported, used, utilized, stored, dumped, handled and/or disposed of at Stewart Air National Guard Base and Stewart International Airport would result in the contamination of the water supply in the City of Newburgh Area as a result of its proximity to Stewart Air National Guard Base and Stewart Airport.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

399.    Further, this contamination then led to the exposure of residents of the City of Newburgh area to the toxins and increased their risk of numerous diseases as more fully set forth above.

400.    Defendant Port Authority of New York and New Jersey has negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally caused the immediate and continuing contamination of soil and groundwater in and around the City of Newburgh Area that threatens to further contaminate Plaintiffs.

401.    Defendant Port Authority of New York and New Jersey had a duty to warn Plaintiffs that the aforementioned releases of toxic substances including but not limited to PFOA and PFOS had occurred and that migration of the contaminants could foreseeably contaminate Lake Washington and its tributaries from which Plaintiffs rely upon for water.

402.    Defendant Port Authority of New York and New Jersey breached their duty by failing to warn Plaintiffs that they had failed to prevent the migration of PFOA and PFOS from Stewart International Airport, which led and is leading to further migration of PFOS into Washington Lake.

403.    As a result of Defendant Port Authority of New York and New Jersey's breach of their duty to warn the Plaintiffs, Plaintiffs were forestalled from undertaking effective and immediate remedial measures, and Plaintiffs will be forced to expend millions of dollars and significant resources to test, monitor and remediate the effects of Defendant's negligence for many years into the future.

404.    Defendant Port Authority of New York and New Jersey's breach of its duty to warn was the actual and proximate cause of Plaintiffs' injuries and the actual, imminent, and substantial damage to Plaintiffs.

65

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

405.    Plaintiffs' injuries are the natural and probable consequence of Defendant's breach of their duty.

406.    Defendant's failure to warn was a direct and proximate cause of the environmental and health impacts from PFOS, and potentially other toxic substances, that came from the use, storage, and discharge of AFFF and its constituents at Stewart Air National Guard Base and Stewart International Airport.

407.    As a result of Defendant Port Authority of New York and New Jersey's conduct and the resulting contamination, the value and marketability of the property of the Plaintiffs has been and will continue to be diminished.

408.    Alternatively, as a direct and proximate result of Defendant Port Authority of New York and New Jersey's acts and omissions, Plaintiffs have suffered the need for and the cost of remediation of their properties and/or mitigation systems for those properties, and the cost of alterative water.

409.    As a result of the contamination, Plaintiffs have lost the use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and annoyance as a consequence of the contamination of their properties by Defendant Port Authority of New York and New Jersey.

410.    As a result of Defendant's conduct and the resulting contamination, the Plaintiffs have been injured in that they have suffered from illness as a result of their exposure to PFOS, PFOA, and potentially other toxic substances.

411.    As a result of Defendant's conduct and the resulting contamination, Plaintiffs have been injured in that their exposure to PFOS, PFOA, and possible other toxic substances caused them personal injuries in the form of illnesses and medical conditions.

66

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

## AS AND FOR A FOURTH CAUSE OF ACTION:
### Products Liability, Failure to Warn

412.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

413.    This cause of action is brought pursuant to New York law.

414.    Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

415.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

416.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFC's would result in the foreseeable contamination of the City of Newburgh's water supply (i.e. Lake Washington and its tributaries) as a result of its proximity to the Stewart International Airport and Stewart Air National Guard Base.

417.    Knowing of the dangerous and hazardous properties of the AFFF, Defendants had the duty to warn of the hazards associated with AFFF entering and poisoning the environment and groundwater.

418.    Defendants failed to provide sufficient warning to the end users and the public of AFFF, including Plaintiffs, the City of Newburgh, Stewart International Airport and Stewart Air National Guard Base, that the use and storage of Defendants' product would cause the product to be released into the environment and cause the contamination of the environment, groundwater, and drinking water, with PFOA, PFOS, and potentially other toxic substances.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

419.    Further, this contamination then led to the exposure of residents of the City of Newburgh to the toxins and increased their risk of numerous diseases as more fully set forth above.

420.    Adequate instructions and warnings on the AFFF products could have reduced or avoided these foreseeable risks of harm to both the residents of the City of Newburgh and their properties.

421.    Had Defendants provided adequate warnings, the residents and/or the City of Newburgh could have taken measures to avoid or lessen Plaintiffs' exposure.

422.    Had Defendants provided adequate warnings, the users of AFFF at Stewart International Airport and Stewart Air National Guard Base could have taken steps to reduce or prevent the release of PFOA, PFOS, and potentially other toxic substances into the environment, groundwater, and drinking water.

423.    Defendants' failure to warn was a direct and proximate cause of the environmental and health impacts from PFOA, PFOS, and potentially other toxic substances, that came from the use and storage of AFFF at Stewart International Airport and Stewart Air National Guard Base.

424.    As such, Defendants' failure to provide adequate and sufficient warnings for the AFFF that they manufactured, marketed, and sold renders the AFFF a defective product.

425.    As a result of Defendants' conduct and the resulting contamination, the value and marketability of the property of the Plaintiffs has been and will continue to be diminished.

426.    Alternatively, as a direct and proximate result of Defendants' conduct, Plaintiffs have suffered the need for and the cost of remediation of their properties and or mitigation systems for those properties, and the cost of alternative water.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

427.    As a result of the contamination Plaintiffs have lost use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and annoyance as a consequence of the contamination of their properties by Defendants.

428.    As a result of Defendants' conduct and the resulting contamination, the Plaintiffs have been injured in that their exposure to PFOS, PFOA, and potentially other toxic substances has caused them injury in the form of illnesses and medical conditions.

429.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiffs.

### AS AND FOR A FIFTH CAUSE OF ACTION:
### Strict Product Liability

430.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

431.    This cause of action is brought pursuant to New York law.

432.    Defendants knew or should have reasonably known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

433.    Defendants knew or should have reasonably known that the manner in which they were manufacturing, marketing, and selling AFFF, containing PFC's, was hazardous to human health and the environment.

434.    Defendants knew or should have reasonably known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFC's would result in the contamination of the City of Newburgh's water supply (i.e. Lake Washington and its tributaries) as a result of its proximity to the Stewart International Airport and Stewart Air National Guard Base.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

435.    Knowing of the dangerous and hazardous properties of the AFFF, Defendants could have manufactured, marketed, and sold alternative designs or formulations of AFFF that did not contain PFC's.

436.    These alternative designs and/or formulations were already available, practical, similar in cost and technologically feasible.

437.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to persons and property that was caused by the Defendants' manufacture, marketing, and sale of AFFF that contained PFC's.

438.    Additionally, the AFFF that was manufactured, marketed, and sold by the Defendants contained PFC's that were so toxic and unreasonably dangerous to human health and the environment, the toxic chemicals were so mobile and persistent, that the act of designing, formulating, manufacturing, marketing, and selling this product was unreasonably dangerous under the circumstances.

439.    Further, this contamination then led to the exposure of residents of the City of Newburgh to the toxins and increased their risk of numerous diseases as more fully set forth above.

440.    The AFFF manufactured, marketed, and sold by the Defendants was dangerous and defective because the foreseeable risk of harm could have been reduced or eliminated by the adoption of a reasonable, alternative design that was not unreasonably dangerous.

441.    Defendants' defective design and formulation of AFFF was a direct and proximate cause of the environmental and health impacts from PFOA, PFOS, and potentially other toxic substances, that came from the use and storage of AFFF at the Stewart International Airport and Stewart Air National Guard Base.

70

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

442.   As a result of Defendants' defective design and formulation of AFFF, the resulting contamination, the value and marketability of the property of the Plaintiffs has been and will continue to be diminished. Plaintiffs have suffered the need for and the cost of remediation of their properties and or mitigation systems for those properties, and the cost of alterative water.

443.   As a result of the contamination Plaintiffs have lost use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and annoyance as a consequence of the contamination of their properties by Defendants.

444.   As a result of Defendants' defective design and formulation of AFFF, the resulting contamination, the Plaintiffs have been injured in that their exposure to PFOS, PFOA, and potentially other toxic substances has caused them personal injuries in the form of illnesses and medical conditions.

445.   As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to the Plaintiffs.

446.   Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiffs.

## AS AND FOR A SIXTH CAUSE OF ACTION:
### Trespass

447.   Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

448.   This cause of action is brought pursuant to New York law.

449.   Defendant Port Authority of New York and New Jersey's intentional acts and/or omissions caused toxic substances, including but not limited to PFOS, to be spilled or disposed of and released into the ground at Stewart Air National Guard Base and Stewart International Airport and to enter the groundwater and aquifer beneath.

71

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

450.    Upon information and belief, Defendant Port Authority of New York and New Jersey had exclusive control over Stewart International Airport since 2007.

451.    PFOS has migrated and, upon information and belief, continue to further migrate from Stewart Air National Guard Base and Stewart International Airport to and invade Plaintiffs' properties and the water from which Plaintiffs receive their water.

452.    Defendant Port Authority of New York and New Jersey's intentional acts and omissions caused toxic substances to enter and trespass upon the land and subsurface waters of Plaintiffs without consent and interfere with Plaintiffs' exclusive possession and/or right of possession, resulting in a non-permissive entry onto Plaintiffs' land and subsurface waters.

453.    Upon information and belief, Defendant Port Authority of New York and New Jersey affirmatively, voluntarily and intentionally failed to act in a manner that would prevent the migration of the contaminants into Plaintiffs' properties.

454.    At the time of the above-described affirmative, voluntary and intentional acts and omissions, Defendant Port Authority of New York and New Jersey, knew or should have reasonably known that PFOA and PFOS would pass through the soil, groundwater, Lake Washington and the City of Newburgh's water supply system and contaminate Plaintiffs' properties.

455.    The intentional actions by Defendant Port Authority of New York and New Jersey resulted in the immediate and continued trespass, injury and damage to Plaintiffs, their water supply and/or properties from the introduction of PFOA and PFOS into the properties, pipes, and appliances of Plaintiffs.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

456.    Defendant Port Authority of New York and New Jersey knew or should have known that failing to properly remediate the contamination would result in a further trespass upon Plaintiffs' properties and exacerbate the harm to Plaintiffs.

457.    As a direct result of the foregoing trespass by Defendant Port Authority of New York and New Jersey, Plaintiffs have suffered injuries including, but not limited to: property damage, the difference between the current value of their property and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, investigative costs, additional testing costs, treatment costs, loss of use of water, purchase of bottled water, and purchase of filtration systems.

### AS AND FOR A SEVENTH CAUSE OF ACTION:
#### Wrongful Death (Plaintiff Elwood Good Only)

458.    Plaintiff hereby repeats, realleges, and reiterates each allegation in the preceding paragraphs as if fully restated herein.

459.    This cause of action is brought pursuant to New York law.

460.    Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

461.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF/Component Products containing PFC's would result in the contamination of the municipal and private well drinking supplies of Newburgh, as a result Plaintiff proximity to Stewart International Airport and Stewart Air National Guard Base.

462.    As manufacturers, marketers, and sellers of AFFF/Component Products, Defendants owed a duty to Plaintiff and all persons whom its products might foreseeably harm and to exercise due care in the formulation, manufacture, sale, labeling, warning, and the use of PFAS-containing AFFF.

73

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

463.    Defendants owed a duty to Plaintiff to act reasonably and not place inherently dangerous AFFF/Component Products into the marketplace when its release into the drinking water supplies was imminent and certain.

464.    Defendants knew or should have known that PFAS are highly soluble in water, highly mobile, extremely persistent in the environment, and highly likely to contaminate water supplies if released into the environment.

465.    Defendants knew or should have known that PFAS were leaching from AFFF used for fire protection, training, and response activities and would contaminate water supplies.

466.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling their AFFF/Component Products would result in the contamination of the private wells that provided drinking water to the communities surrounding Stewart International Airport and Stewart Air National Guard Base.

467.    As a result of Defendants' conduct and the resulting contamination, Plaintiff has been injured by the exposure to PFOS, PFOA, and potentially other toxic substances that caused ulcerative colitis, liver and kidney disease and thyroid disease.

468.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's health and property rights.

469.    Plaintiff's Next of Kin, is empowered by EPT § 5-4.1 to bring survival action.

## VII.    PUNITIVE DAMAGES

470.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM

NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022

RECEIVED NYSCEF: 06/30/2022

471.   Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that caused the foregoing property damage, nuisances, and injuries upon the persons and properties of Plaintiffs, disregarding their protected rights.

472.   Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure PFOS/A-containing AFFF would not be released into Plaintiffs' drinking water and into their bodies.

473.   Defendants have caused great harm to the property and water supplies of Plaintiffs and demonstrated an outrageous conscious disregard for their safety with implied malice, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

a.   a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs.

b.   an award to Plaintiffs of compensatory, exemplary, consequential, nominal, and punitive damages;

c.   an order for an award of attorney fees and costs, as provided by law;

d.   an award of pre-judgment and post-judgment interest as provided by law, and

e.   an order for all such other relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims asserted in this Complaint.

FILED: ORANGE COUNTY CLERK 06/30/2022 12:29 PM
NYSCEF DOC. NO. 1

INDEX NO. EF003519-2022
RECEIVED NYSCEF: 06/30/2022

Dated: New York, New York
June 30, 2022

Respectfully submitted,

**NAPOLI SHKOLNIK**

By: */s/ Patrick Lanciotti*
Patrick Lanciotti, Esq.
Andrew Croner, Esq.
Nicholas Mandicino
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000
planciotti@napolilaw.com
acroner@napolilaw.com
nmandicino@napolilaw.com

Paul J. Napoli, Esq.
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
(833) 271-4502
pnapoli@nsprlaw.com